and likely by its mere recitation to arouse prejudice against the defendant. In view of this situation, I think that the attitude of the learned trial court was well calculated to prejudice the jury against the cause of the defendant. The court repeatedly sustained objection to questions propounded by the defendant's counsel which were in themselves proper. It is true that these questions were not very important, and the rulings upon them, while erroneous, would, if considered alone, be insufficient to justify a reversal of the judgment. When these rulings are considered in connection with the attitude of apparent hostility which the learned court maintained toward the counsel for the defendant, I think it becomes evident that the jury may well have been prejudiced against the defendant.

Nothing is of greater importance than that all litigants, no matter what the charge against them may be, should have a fair trial. A careful examination of this record has impressed me with the opinion that this defendant was not accorded such a trial, and in the interests of justice I think that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LEHMAN, J., concurs.

GAVEGAN, J. (dissenting). While the record on this appeal discloses incidents in the trial of the case which are most regrettable, I do not consider that the verdict of the jury was influenced in any degree by the attitude of the court towards the defendant's counsel. Believing, as I do, that the defendant's own testimony discredited him in the minds of the jury, I think the verdict should stand, and that the plaintiff should not be compelled to go to trial again on the issues which were found in her favor.

. The judgment should be affirmed, with costs to the respondent.

---

HURLEY v. ATLANTIC, G. & P. CO.

(Supreme Court, Appellate Division, Third Department. May 4, 1910.)

1. MASTER AND SERVANT (§ 134*)—INJURIES TO SERVANT—MACHINERY—SYSTEM OF WORK—NEGLIGENCE.

In an action for injuries to a servant, held, that the master was not negligent in not arranging a system of signals so as to avoid such an accident as that which caused the injuries.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 270, 280; Dec. Dig. § 134.*]

2. MASTER AND SERVANT (§ 121*)—INJURIES TO SERVANT—GUARDING MACHINERY.

There can be no recovery for the death of an engineer caused by the starting of an engine on a dredge by a lever man situated on the upper deck, on the theory that the machinery should have been guarded where at the time of the accident the engineer had his hand on the engine examining some repairs which he had made, and, being so close, his foot was caught in unguarded cogwheels, since the position he assumed was voluntary and with full knowledge of the consequence if the machinery should start.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 229; Dec. Dig. § 121.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Washington County.

Action by Catharine Hurley, administratrix, against the Atlantic, Gulf & Pacific Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

The plaintiff's intestate, Daniel P. Hurley, was an engineer employed on a dredge operated by the defendant. In the hold of the dredge and at its forward part was the cutter engine room 10 feet wide and nearly 25 feet long. In that room was the cutter engine which by a large and small cogwheel rotating into each other transmitted power to a shaft extending through the side of the dredge and driving the cutter which cut or loosened the earth or mud to be removed. The cutter engine received its power from the boilers near the rear of the dredge, being connected therewith by a steam pipe. In the progress of the work the cutter engine would frequently stop, owing to the clogging or obstructing by the material which was being removed. A lever man stationed in the lever room on the upper deck by supplying the steam to the cutter engine controlled its operation. When it stopped by the clogging of the material and the obstruction was removed, he supplied the steam with which to again set it in motion. In conjunction, however, with this control which the lever man had over the cutter engine, there was also constructed a stop valve in the steam pipe connecting the boilers with the cutter engine. This stop valve was only three or four feet in the rear of the cutter engine, and was designed to give any person working in connection with the latter engine absolute control thereof independently of the operation of the lever man. If this stop valve was closed, the lever man was powerless to set the cutter engine in motion.

At the time of the accident Hurley, the engineer, was in charge of the entire machinery. A short time prior thereto some machinery in the cutter engine room had been repaired by Hurley and his assistant. These repairs made it necessary for them to observe that one of the bearings did not become overheated by friction. Hurley entered the room while the engine was quiet, and asked his assistant about the bearing. The latter at that time had his hand upon the bearing and said it was hot. Hurley put his hand upon it when the engine was started by the lever man. Hurley stood at the time in such a position with reference to the cogwheels that, when they started, his foot came in contact with them, and he received injuries which resulted in his death. The stop valve had not been closed. Hurley knew about this valve and its purpose, and had assisted in installing it in the dredge, and had given instructions to his assistant that it must be closed before doing any work on the cutter engine.

Plaintiff has recovered a judgment because of the alleged negligence of the defendant arising out of the foregoing facts.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

James Russell Soley and Carroll G. Walter, for appellant.
Kiley & Bush (T. D. Trumbull, Jr., of counsel), for respondent.

COCHRANE, J. The jury were told by the trial justice that they might find the defendant negligent, either because it failed to provide a system of signals between the lever man and those in the cutter engine room, whereby the latter could be informed that the former was about to start the cutter engine, or because the machinery in the cutter engine room was not guarded.

First. The men in the cutter engine room had absolute control of that engine. It was made their duty to close the stop valve, and they were thereby rendered entirely independent of the action of the lever man. He was powerless if they made proper use of the facilities at

their disposal. The plan adopted was, to say the least, certainly as safe as a method of communication between the lever man and the cutter engine room. By the latter method the deceased would have been dependent on the proper observance of duty by the lever man, whereas, by the method in use, the deceased held his safety in his own hands, and could not be made the victim of any inattention to duty by the lever man. The defendant clearly performed its entire duty in this respect.

Second. It may be that this machinery could have been guarded. The ordinary purpose of guarding machinery, however, is to prevent workmen from accidently or inadvertently coming in contact therewith. Here the deceased purposely placed himself in contact with the machinery. His duty required him to do so for the purpose of repairing it and to see whether the part repaired was operating properly. Possibly, if the machinery had been guarded, the deceased could not have placed himself in such a position with reference thereto that he would have been injured. But the position which he assumed was voluntary and designed, and not accidental or inadvertent, and was assumed with full knowledge of the consequences in case the machinery should start. If this accident was due to the absence of guards, the record fails to disclose such fact.

The judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.